USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: AUG 1 1 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HARTFORD UNDERWRITERS INSURANCE COMPANY,

                Plaintiff,

                -against-

HANOVER INSURANCE COMPANY,

                Defendant.

No. 14-CV-8213 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Hartford Underwriters Insurance Company ("Hartford") brings this action against Defendant Hanover Insurance Company ("Hanover") seeking declaratory relief concerning the priority of coverage and allocation of defense and indemnity costs between Hartford and Hanover in connection with an underlying lawsuit brought against their mutual insured, Massivemedia, Inc. ("Massivemedia"). Before the Court is Hanover's motion to dismiss the Complaint for failure to state a claim and Hartford's cross motion for summary judgment. For the reasons that follow, Hanover's motion is granted. Because the case is dismissed on Hanover's motion, Hartford's summary judgment motion is denied as moot.

## BACKGROUND

### I.    Factual Background

Massivemedia, a media and marketing vendor, entered into an independent contracting agreement with Ramak E. Hamzeh, whereby Hamzeh was to work at an event sponsored by Massivemedia. Compl. ¶ 9. On March 24, 2011, following the event, Hamzeh was driving back to the event venue to pick up Massivemedia's marketing materials when she struck and injured three

pedestrians (the "Claimants") with her car. *Id.* at ¶ 10. The car was not owned by Massivemedia, but by Hamzeh's grandmother. *Id.* at ¶ 11.

The Claimants subsequently commenced a personal injury action against, among others, Hamzeh and Massivemedia (the "Underlying Action"). *Id.* at ¶ 12. Massivemedia sought coverage from both Hartford and Hanover in connection with the Underlying Action. *Id.* at ¶ 1. Hartford had issued a commercial auto policy to Massivemedia, which, under the policy's "other insurance" clause, provided excess coverage for "nonowned autos" (the "Hartford Policy"). *Id.*[1] Hanover, meanwhile, had issued a businessowners policy to Massivemedia, which also included an "other insurance" clause that provided excess coverage for any "non-owned autos" (the "Hanover Policy"). *Id.* Both policies, in relevant part, otherwise provided primary coverage. *See* Joyce Decl. Ex. B ("Hartford Policy") at 57; Joyce Decl. Ex. C ("Hanover Policy") at 108.[2]

Because the accident involved a car that was not owned by Massivemedia, but was driven at the time by Hamzeh in connection with Massivemedia's business, the accident implicated the "nonowned auto" provisions of the insurers' policies. *Id.* at ¶ 28. Hartford took the position that Hanover should provide co-insurance for Massivemedia and sought Hanover's participation in the defense of Massivemedia as well as in settlement discussions and the payment of any settlement amount. *Id.* at ¶ 31. Hanover, however, disputed the priority of coverage and did not consider itself to be co-insurers with Hartford, therefore declining to participate in settlement negotiations or to contribute to any settlement amount. *Id.* at ¶¶ 32-33, 36.

---

[1] "In insurance contracts the term 'other insurance' describes a situation where two or more insurance policies cover the same risk in the name of, or for the benefit of, the same person." *Great N. Ins. Co. v. Mount Vernon Fire Ins. Co.*, 92 N.Y.2d 682, 686-87 (1999). "Excess coverage" refers to insurance that "'kicks in' to provide additional coverage once the policy limits of other available insurance are exhausted." *Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co.*, 22 F.3d 414, 419 (2d Cir. 1994) (citation omitted). A primary policy generally "must pay out its entire limit first, followed by policies that were intended to be excess." *Certain Underwriters v. Illinois Nat. Ins. Co.*, No. 09-CV-4418 (LAP), 2015 WL 1623822, at *3 (S.D.N.Y. Mar. 13, 2015).

[2] Page numbers refer to the exhibits' Bates numbers.

2

Hartford assumed coverage for Massivemedia's defense and indemnification in connection with the Underlying Action, which was ultimately settled. *Id.* at ¶¶ 13, 27. As part of the settlement, Hartford paid $750,000 on behalf of Massivemedia to two of the Claimants (the "Settlement Amount"). *Id.* at ¶¶ 14, 33. Hartford reserved its right to litigate the priority of coverage issue and pursue contribution from Hanover. *Id.* at ¶ 34.

On October 14, 2014, Hartford filed the Complaint in this action, seeking a declaratory judgment that the Hanover Policy be read as co-insurance with the Hartford Policy and that Hanover reimburse Hartford for its pro rata share of the Settlement Amount and costs associated with the Underlying Action. *Id.* at ¶¶ 38-41. Hanover responds that the language of the policies requires that Hartford exhaust its policy limit first, before Hanover pays for any loss. *See* Def.'s Br. at 11-14. In other words, Hanover contends that its policy is excess over Hartford's policy.

## II. The Policies

"Where the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage . . . priority of coverage . . . among the policies is determined by comparison of their respective 'other insurance' clauses." *Sport Rock Int'l, Inc. v. Am. Cas. Co. of Reading, Pa.*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009) (citation and alteration omitted). The key portions of the parties' respective insurance policies are thus the "other insurance" clauses, which both purport to provide primary coverage except, in relevant part, in the case of non-owned autos, where coverage will only be on an excess basis.

The Hartford Policy's "other insurance" clause states, in relevant part, the following:

> **5. Other Insurance**
> **a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .
> **d.** When this Coverage Form and any other Coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our

share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Hartford Policy at 57.

The Hanover Policy's "other insurance" clause provides, in relevant part, as follows:

### H. Other Insurance
. . . .
#### 2. SECTION II – LIABILITY
If other valid and collectible insurance is available to the insured for a loss we cover under SECTION II – LIABILITY, our obligations are limited as follows:
##### a. Primary Insurance
This insurance is primary except when Paragraph b. below applies .

##### b. Excess Insurance
This insurance is excess over:
1) Any other insurance, whether primary, excess, contingent or on any other basis:

. . . .

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. Aircraft, Auto or Watercraft of Section II – Liability;[3] and . . .

When this insurance is excess, we will have no duty under SECTION II LIABILITY to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
c. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
2) The total of all deductible and self-insured amounts under all that other insurance.
d. We will share the remaining loss, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations for this Coverage.

---

[3] Exclusion g. generally excludes from coverage "'bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured." Hanover Policy at 94. By separate endorsement, however, the Hanover Policy was modified to provide coverage for "Non-Owned Auto Liability." Hanover Policy 19-20. There is no dispute that the "other insurance" provision renders this coverage excess.

4

      **e.** Method of Sharing
      If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
      If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Hanover Policy at 108.

## DISCUSSION

Hanover has moved to dismiss Hartford's declaratory judgment action, arguing that its policy is excess to Hartford's.

**I.**    **Motion to Dismiss Standard**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citation omitted).

"For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference, as well as . . . documents that the plaintiffs either possessed or knew about and upon which they relied in bringing suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted). Because the Hartford and Hanover Policies were clearly relied upon in bringing this action, those contracts, subsequently submitted by the parties, may be relied upon to resolve this motion.

5

*See Arch Ins. Co. v. Harleysville Worcester Ins. Co.*, No. 13-CV-7350 (DLC), 2014 WL 3377124, at *4 (S.D.N.Y. July 7, 2014). "Issues of contract interpretation are generally matters of law and therefore are suitable for disposition on a motion to dismiss." *Citadel Equity Fund Ltd. v. Aquila, Inc.*, 371 F. Supp. 2d 510, 516 (S.D.N.Y. 2005), *aff'd*, 168 F. App'x 474 (2d Cir. 2006) (citation and alteration omitted).

## II. Ratable Contribution Does Not Apply

It is undisputed that the Hartford and Hanover Policies are primary policies with "other insurance" clauses that render them excess coverage with regard to "non-owned autos," *i.e.*, the subject of the Underlying Action. Pl.'s Mem. of Law. in Support of Mot. for Summary Judgment and in Opp. to Def.'s Mot. to Dismiss ("Opp.") at 4. The parties dispute, however, the priority of coverage between the two policies.

Under New York law, which the parties agree governs this action, there is generally an "equitable right to contribution[] where there is concurrent insurance even in the absence of a policy provision for apportionment . . . .'" *U.S. Fire Ins. Co. v. Fed. Ins. Co.*, 858 F.2d 882, 885 (2d Cir. 1988) (quoting *Travelers Ins. Co. v. Gen. Accident, Fire & Life Assurance Corp.*, 28 N.Y.2d 458, 463 (1971)). "[W]here each of the policies covering the risk 'generally purports to be excess to the other, the excess coverage clauses are held to cancel out each other and each insurer contributes in proportion to its limit amount of insurance . . . .'" *Id.* (quoting *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 655 (1980)). This general rule of ratable contribution is "inapplicable, however, if it 'would effectively deny and clearly distort the plain meaning of the terms of the policies.'" *Id.* (quoting *Lumbermens*, 51 N.Y.2d at 655). In *State Farm Fire & Cas. Co. v. LiMauro*, the New York Court of Appeals thus established the following

exception to the ratable contribution rule (the "*LiMauro* Rule"): "an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not by the language used negate that possibility must contribute ratably with a similar policy, but must be exhausted before a policy which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies." 65 N.Y.2d 369, 375-76 (1985). "In determining which insurance carrier should be held primarily liable, or indeed whether each insurance carrier must contribute ratably . . . the precise language of the limiting clauses in the policies must be examined." *Kipper v. Universal Underwriters Grp.*, 756 N.Y.S.2d 682, 684 (4th Dep't 2003) (citation omitted).

Hartford contends that, since both insurers' "other insurance" clauses render the coverage for non-owned autos excess, they must cancel each other out, thus leaving the insurers to contribute in proportion to their insurance limits, in accordance with the general rule of ratable contribution. Hanover counters that because the Hartford Policy expressly contemplates contribution with other excess policies, and because the Hanover Policy, by its terms, negates contribution with other excess insurers and establishes that it is excess over other excess policies, the *LiMauro* Rule applies and Hartford must exhaust its policy before Hanover is liable for any losses.

Several cases are instructive here. In *U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.*, two insurers covered the auto accident at issue. No. 98-CV-8168 (MBM), 2001 WL 521809, at *4 (S.D.N.Y. May 16, 2001). U.S. Underwriters sued Liberty Mutual for a declaration that the latter's policy must be exhausted before the former was liable. *Id.* at *2. Liberty Mutual's policy was virtually identical to Hartford's policy here. For non-owned vehicles, Liberty Mutual's policy stated that it was "excess over any other collectible insurance," but went on to say that "[w]hen two or more policies cover on the same basis, either excess or primary, [Liberty Mutual] will pay

7

only [its pro rata] share." *Id.* at *4. As such, Judge Mukasey concluded that Liberty Mutual's policy "purports to be excess over primary insurance but, with respect to other excess insurance, it is of equal status" and specifically "contemplates contribution with other excess policies." *Id.*

U.S. Underwriters' policy, however, did not "similarly contemplate contribution." *Id.* That policy stated that it would indemnify the insured "for a loss in excess of the primary insurer's limit" and further defined loss "to exclude any part of the insured's liability which is covered by other insurance." *Id.* This provision, the court concluded, was "equivalent to a more conventional clause in which the policy expressly states that it shall be excess to other insurance." *Id.* The court held that because "Liberty Mutual's policy contemplates contribution with other excess insurance, whereas, in contrast, U.S. Underwriters' policy purports to be excess over any other insurance, Liberty Mutual must exhaust its policy limit first." *Id.* at *5.

Similarly, in *American Transit Ins. Co. v. Continental Cas. Ins. Co.*, the court held that a policy with language akin to Hanover's was excess to a policy that, even if excess, contemplated contribution. 625 N.Y.S. 2d 653, 654 (2d Dep't 1995). There, the plaintiff's policy, like Hanover's here, specifically provided that it would be "excess over any other collectible insurance, whether primary, excess or contingent." *Id.* Thus, the court concluded, "the plaintiff's [policy] negates contribution and manifests an intention that the plaintiff's insurance coverage is to be excess over any other excess insurance coverage." *Id.* The defendant's policy, which purported to be excess but "contemplate[d] contribution with other insurance carriers, whether excess or primary," therefore had to be exhausted first. *Id.*; *see also Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 855 N.Y.S.2d 459, 466 (1st Dep't 2008) ("other insurance" clause specifically providing that coverage "is excess over any other insurance, whether primary, *excess*, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's

8

Limit of Insurance . . . negat[es] any intention to contribute with other policies except such as were purchased as excess over its excess insurance" (emphasis in original)); *Liberty Mut. Ins. Co. v. Hartford Ins. Co. of Midwest*, 811 N.Y.S.2d 716, 720-21 (2d Dep't 2006) (policy identical to Hartford's here had to be exhausted before a policy manifesting an intent to be excess over other excess insurance and negating contribution was liable).

Here, the plain language of the policies at issue mandate the same outcome. Like Liberty Mutual's policy in *U.S. Underwriters*, Hartford's policy states that it is "excess over any other collectible insurance" but further provides that when it or any other policy "covers on the same basis, either excess or primary, we will pay only our share." Hartford Policy at 57. "Our share," as in *U.S. Underwriters*, is defined as Hartford's pro rata share: "Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis." Hartford Policy at 57. Thus, as Judge Mukasey held with respect to Liberty Mutual's nearly identical policy, the Hartford Policy "purports to be excess over primary insurance but, with respect to other excess insurance, it is of equal status" and "contemplates contribution with other excess policies." *U.S. Underwriters*, 2001 WL 521809, at *4. By contrast, the Hanover Policy specifically states that it is excess over "[a]ny of the other insurance, whether primary, *excess*, contingent or on any other basis," and, unlike the Hartford Policy, clearly negates contribution with other excess insurance by stating that "[w]hen this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of . . . the total amount that all such other insurance would pay for the loss in the absence of this insurance[,] and . . . [t]he total of all deductible and self-insured amounts under all that other insurance." Hanover Policy at 108 (emphasis added). Like the plaintiff insurer's definition of loss in *U.S. Underwriters*, which limited coverage to losses that remained "only after

9

subtracting the limits of the insured's primary insurance as well as any other insurance that would cover the loss," 2001 WL 521809, at *4, the Hanover Policy here "purports to be excess over any other insurance" and is not on equal footing with, nor contemplates contribution with, other excess policies. *See also Bovis*, 855 N.Y.S.2d at 466 (recognizing policy language similar to Hanover's as manifesting an intent to be excess over other excess policies). A policy like Hanover's which "negates contribution and manifests an intention that [it] . . . be excess over any other excess insurance" will not be liable for a loss until a policy like Hartford's, which purports to be excess but contemplates contribution with other insurers is first exhausted. *Am. Transit*, 625 N.Y.S.2d at 654; *Hartford Ins. Co. of Midwest*, 811 N.Y.S.2d at 720-21.[4]

Since New York law is clear that "an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies"—such as the Hartford Policy here—must be exhausted before "a policy which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies"—as the Hanover Policy does here—the general rule of ratable contribution does not apply and Hanover will not be liable for any losses until Hartford has exhausted its policy limit. *LiMauro*, 65 N.Y.2d at 375-76.

---

[4] Hartford argues that the part of the Hanover policy defining its loss (and negating contribution) is not triggered in this case because it only applies to instances where the Hanover policy is excess to other insurance, which Hartford reads as when Hanover is excess only to other primary insurance. Opp. at 9. This willfully ignores the plain language in the Hanover "other insurance" clause stating that it will be excess over "any other insurance, whether primary, *excess*, contingent or on any other basis . . . ." Hanover Policy at 108 (emphasis added).

Hartford further contends that because the Hanover Policy includes a "method of sharing" subparagraph, the Hanover Policy intends that it "*will share* where it and the 'other insurance' are *both excess* (as is indisputably the case here . . .)." Opp. at 10 (emphasis in original). Read together with the rest of the Hanover "other insurance" clause, however, this "method of sharing" clause does not provide that Hanover will share where both policies are excess. It provides instead that when Hanover is liable for the amount that remains after exhausting the other insurance over which it is excess, and where, at that point, it must share with another policy, it will do so in accordance with the "method of sharing" clause. *See* Hanover Policy at 108. The "method of sharing" clause does not somehow negate the otherwise manifest intention to not contribute with other insurance like Hartford's.

10

To hold otherwise would be to "distort the plain meaning of the terms of the policies of insurance here involved." *Lumbermens*, 51 N.Y.2d at 655.[5]

### III. The Two Policies May be Fully Effectuated Without Depriving the Insured of Coverage

Contrary to the Court's holding, Hartford argues that because "both policies provide that they are excess under the present circumstances . . . they cancel each other out and share on a pro rata by limits basis." Opp. at 7-8. But policies do not cancel each other out simply because they both purport to be excess; the key consideration is whether they each "purport[] to be excess to the other," *Lumbermens*, 51 N.Y.2d at 655, such that giving effect to both policies would result in the paradoxical circumstance of leaving the insured "with no coverage at all." *LiMauro*, 65 N.Y.2d at 374. Where both policies can be triggered effectively without resulting in such a scenario, there is no reason to cancel each out and force the insurers to contribute when the plain terms of the policies do not so contemplate.

Here, while both policies cover non-owned auto liability on an excess rather than primary basis, the language of the policies allows both to be effectuated without any loss of coverage. As discussed above, the Hartford Policy's statement that it is "excess over any other collectible insurance," coupled with its pro rata contribution provision, renders the policy "excess over *primary* insurance but, with respect to other *excess* insurance, it is of equal status." *U.S. Underwriters Ins.*

---

[5] The premiums paid may be a factor in determining the level of risk intended to be insured and therefore the priority of coverage between two policies. *See, e.g.*, *LiMauro*, 65 N.Y.2d at 378. Even after additional briefing requested by the Court, however, both parties appear to minimize the relevance of the premium structures in this case. As Hanover suggests, comparisons between the two policies' premiums would be difficult in this case, given the different scopes of coverage involved—Hanover provided broad property and liability coverage over a wide variety of risks, while Hartford provided a more narrow business auto policy. *See* Hanover Letter Br. at 1-2, ECF No. 34. The parties therefore did not provide—and the Court declines to draw—any persuasive conclusions from the premiums paid. *See Argonaut Ins. Co. v. U.S. Fire Ins. Co.*, 728 F. Supp. 298, 303 n.4 (S.D.N.Y. 1990) ("[t]he state of the record has not allowed the court to rely upon the size of premiums under the two policies . . . .").

*Co.*, 2001 WL 521809, at \*4 (emphasis added); *see also LiMauro*, 65 N.Y.2d at 376 (the "juxtaposition" in the "other insurance" clause of a pro rata contribution provision with a provision purporting to be excess "over any other valid and collectible insurance" with regard to non-owned autos "strongly suggests that what [the insurer] sought to achieve was an excess position with respect to other primary insurance covering the nonowned vehicle," rather than over other excess insurance); *Sport Rock*, 878 N.Y.S.2d at 345 ("[T]he standard phrase 'other valid and collectible insurance' means other valid and collectible *primary* insurance." (quoting *Jones v. Medox, Inc.*, 430 A.2d 488, 491 (D.C. 1981) (emphasis in original)). The Hartford Policy thus does not purport to be excess over the Hanover Policy. The Hanover Policy, by contrast, expressly states that it is excess over other excess policies and manifests an intent *not* to contribute with such other excess policies. *See* Hanover Policy at 108; *Am. Transit*, 625 N.Y.S.2d at 654; *Bovis*, 855 N.Y.S.2d at 466. Therefore, because only the Hanover Policy purports to be excess to the Hartford Policy, and not vice versa, the language of the policies pose no obstacle to exhausting the Hartford Policy first, then the Hanover Policy. *See also Philadelphia Indem. Ins. Co. v. Employers Ins. Co. of Wausau*, 318 F. Supp. 2d 170, 172 (S.D.N.Y. 2004) (where one policy manifests an intent to be excess over other excess policies, other policies covering the same risk, "including those with merely 'general' excess insurance clauses—that is, excess insurance clauses that do not purport to be excess in relation to other *excess* policies—must be exhausted before the former policy becomes obliged to pay" (citation omitted) (emphasis in original)).

Hartford's argument that the two policies are "not substantively different," Opp. at 10 n.10, and thus "mutually repugnant," Opp. at 2, essentially asks the Court to compare only the two policies' excess provisions, independent of the contribution provisions which are critical under New York law to determine priority of coverage. *See LiMauro*, 65 N.Y.2d at 375-76 (a policy which

purports to be excess but "contemplates contribution with other excess policies" must be exhausted before a policy which "negates contribution with other carriers"). Hartford argues that the language in its "other insurance" clause stating that it is "excess over any other collectible insurance" is equivalent to the Hanover provision that it is excess over "[a]ny of the other insurance, whether primary, excess, contingent or on any other basis" and cites cases purporting to conclude that the "extra words" in the Hanover Policy "add no meaning and do not alter the mutually repugnant relationship of the two [p]olicies." Pl.'s Mem. in Further Support of its Mot. for Summary Judgment ("Pl.'s Reply") at 2. However, reading the "other insurance" clauses in their entirety to include the contribution provisions, as *LiMauro* instructs, reveals that, as discussed above, the Hartford Policy contemplates contribution with other excess policies while the Hanover Policy does not. Thus, as in *LiMauro*, the Hartford Policy "purports to be excess coverage but contemplates contribution with other excess policies" and "must be exhausted" before the Hanover Policy, "which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over other excess policies." 65 N.Y.2d at 375-76.

None of the cases cited by Plaintiff alter this conclusion. Plaintiff first cites *LiMauro* for the proposition that "[t]he phrase 'whether primary, excess or contingent' does not add anything to the all inclusive 'other valid' phrase," 65 N.Y.2d at 378 (quoting *Ins. Co. of N. Am. v. Continental Cas. Co.*, 575 F.2d 1070, 1073 (3d Cir. 1978)), and that therefore the Hartford Policy and the Hanover Policy are mutually repugnant. Pl.'s Reply at 2. That language from *LiMauro*, however, was utilized in response to the argument that a policy that otherwise clearly manifested an intent to be excess to the other policy at issue, and which expressly disavowed contribution, somehow lost those qualities because it purported to be excess only over "other collectible insurance with any other insurer," rather than any insurance, "whether primary, excess or contingent." 65

N.Y.2d at 376, 378.  In this context, the *LiMauro* Court held that the absence of the more specific language did not negate the policy's status as excess to the other policy—a policy that, similar to Hartford's here, combined a "provision for pro rata contribution with all insurance" with an excess provision over "any other valid and collectible insurance," thus intending to "achieve . . . an excess position with respect to other primary insurance covering the nonowned vehicle" but not other excess insurance.  *Id.* at 376.  The court never held, as Hartford contends, that the phrase "any other collectible insurance" is synonymous with "any other insurance, whether primary, excess, or contingent" in all instances, and certainly did not conclude that a policy purporting to be excess but contemplating contribution with other excess policies was equivalent to an excess policy that clearly negated contribution.

Hanover's reliance on *Macari v. Nationwide Mut. Ins. Co.* is equally unavailing.  745 N.Y.S.2d 191 (2d Dep't 2002).  There, the court stated that an excess provision using the "whether primary, excess, contingent or . . . any other basis" language was "essentially no different" than one which stated that it would be excess "[i]f there is other insurance covering the same loss or damage."  *Id.* at 193.  This was only true in that case, however, because both policies provided that they would only pay the amount "in excess of the other insurance policy's limit."  *Id.*  Notably, the court in *Macari* did not hold, as Hartford contends, that the "extra words . . . add no meaning," Pl.'s Reply at 2; instead, the court implicitly relied on the "whether primary, excess, contingent or . . . any other basis" language to conclude that the policy containing it manifested an intent to pay "only the amount in excess of the other insurance policy's limit," just as the other policy would.  745 N.Y.S.2d at 193.  In *Macari*, therefore, the court concluded that the differences in language were immaterial because the effect of both policies was to negate contribution and only pay when

14

the other had exhausted its limit. There is no indication in *Macari* that either of the policies contemplated contribution with other excess policies, as the Hartford Policy does here, nor is there any indication that the language used in the Hanover Policy does not manifest an intent to be excess over other excess insurance and negate contribution.

Similarly, while the court in *United National Ins. Co. v. Lumbermens Mut. Cas. Co.* stated that the absence of the "whether primary, excess or contingent" language in one policy and the presence of it in another "does not impact" the court's decision, it did not hold that the former should somehow be stripped of meaning. No. 89-CV-3869 (SWK), 1990 WL 176614, at *3 (S.D.N.Y. Nov. 5, 1990). To the contrary, the court first concluded that, based on the "whether primary, excess or contingent" language—language which the court stated was "free of ambiguity"—the policy containing it "was intended to fall within the final tier of coverage, paying its proceeds after all other non-final tier policies were exhausted." *Id.*[6] Only then did the court state that the absence of such language in the plaintiff's policy "did not impact" its decision, and went on to analyze the language that *was* present in that policy, ultimately holding that it could not decide as a matter of law whether that policy "intended to provide a comparable final level of

---

[6] To be sure, in addition to the "whether primary, excess or contingent" language, the policy at issue in *United National* also specifically stated that it "will not contribute with such other insurance," making explicit its intent to negate contribution. *Id.* at *3. Hartford seizes on similar policies to argue that the *LiMauro* Rule only applies where policies purporting to be excess to other excess insurance expressly use magic words, that it "shall [or will] not contribute" with other insurance. *See* Opp. at 12. The Court disagrees. While *LiMauro* states that its rule will apply where "a policy . . . expressly negates contribution with other carriers"—as was the case in many decisions cited by Hartford, *see, e.g., Hartford Ins. Co. of the Midwest*, 811 N.Y.S.2d at 720—*LiMauro* also goes on to state that its rule will also apply where a policy "otherwise manifests that it is intended to be excess over other excess policies." *LiMauro*, 65 N.Y.2d at 375-76. As discussed above, the Hanover Policy clearly manifests such an intent, both by explicitly stating that it is meant to be excess over other excess insurance, and by defining its loss relative to other excess insurance as only its share that "exceeds the sum of . . . [t]he total amount that all such other insurance would pay . . . in the absence of this insurance . . . and . . . [t]he total of all deductible and self-insured amounts under all that other insurance." Hanover Policy at 108. This definition of loss expresses as much an intention to negate contribution with other excess policies as if it had explicitly stated as much. *See U.S. Underwriters*, 2001 WL 521809, at *4 (policy's description of the "method of asserting that [it] will be excess to other policies is equivalent to a more conventional clause in which the policy expressly states that it shall be excess to other insurance").

15

excess coverage" as the defendant's policy. *Id.* at *4-5. There is thus no assertion in *United National* that the presence of the "extra words" and absence of the same are equivalent, only that a policy need not contain the "extra words" in order to still manifest an intent to be excess over other excess insurance and negate contribution. As discussed above, the Hartford Policy here does not manifest such an intention, instead providing for pro rata contribution with other excess policies. The Hanover Policy, by contrast, does precisely that.

Thus, because the Hartford Policy does not purport to be excess over the Hanover Policy, and because the Hanover Policy manifestly anticipates the converse, both policies may be effectuated without giving rise to the situation the pro rata contribution rule was meant to avoid: depriving the insured of coverage altogether. To apply Hartford's reading of the policies and order pro rata contribution would be to strip away meaning from the plain terms of the policies, in contravention of New York law. *See LiMauro*, 65 N.Y.2d at 374 (the general rule of pro rata contribution will not apply "when its use would distort the meaning of the terms of the policies involved").

### IV. Whether the Hanover Policy is a "True Excess" Policy is Not Dispositive in This Case

Hartford's other primary contention is that the *LiMauro* Rule only applies where the policy purporting to be excess to the other is a "true excess" policy. *See, e.g.*, Pl.'s Reply at 6-8. "A true excess policy (such as the typical umbrella policy) is conditioned on the existence of an underlying primary policy, while a primary policy with an excess other insurance clause is a device by which a primary insurer seeks to limit[] or eliminate its liability where another primary policy covers the risk, thereby making it secondary coverage." *Endurance Am. Specialty Ins. Co. v. Century Sur. Co.*, 46 F. Supp. 3d 398, 428 (S.D.N.Y. 2014). Hartford argues that *Lumbermens*, *LiMauro*, and their progeny only stand for the proposition that a "policy was excess (or need not contribute with)

another policy . . . where the former was a *true excess* policy," as opposed to policies like the ones at issue, which are primary policies made excess with regard to non-owned autos by virtue of their "other insurance" clauses. Pl.'s Reply at 7 (emphasis in original). According to Hartford, because it is undisputed that both policies at issue here are primary, and only excess with regard to non-owned autos by virtue of their "other insurance" clauses, rather than "true excess" policies, they cover the same risk at the same level and must cancel each other out. *See id.* at 6-8.

While it is true that, as a general matter, "there is a difference between a primary insurance policy containing an excess other insurance clause and a true excess policy" in terms of priority of coverage, *Endurance*, 46 F. Supp. 3d at 428, there is no indication in the case law that the *LiMauro* Rule *only* applies where a true excess policy is at issue. Indeed, in *Farm Family Mut. Ins. Co. v. Allstate Ins. Co.*, the court held that the language of the policies rendered one primary policy with an excess clause excess to another primary policy with a lower-tier excess clause. 579 N.Y.S.2d 207 (3d Dep't 1992). That the policy found to be excess to the other was not a "true excess" policy did not alter the analysis of the policies' plain terms.

As *LiMauro* itself stated, whether a policy "is issued as 'umbrella' or 'catastrophe' coverage" is merely "indicative . . . though not conclusive," of an intent of the policy to be excess over other excess policies. 65 N.Y.2d at 376. The court explicitly focused the analysis not on the labeling of the policies but on "the terms of [the insurer's] contract with its insured." *Id.* at 373. That cases relying on *LiMauro* and similar authority have found "true excess" policies to in fact be excess over competing policies does not mean that *only* "true excess" policies may be excess to competing policies, regardless of what the terms of the policies actually provide. To the contrary, as *LiMauro* recognized, it is the terms of the policy that controls. *See also, e.g., Lumbermens*, 51 N.Y.2d at 655 (the general rule of pro rata contribution is inapplicable where "its use would

effectively deny and clearly distort the plain meaning of the terms of the policies"); *Certain Underwriters*, 2015 WL 1623822, at *4 ("the Court first looks to the language of the competing policies").

As discussed at length above, the plain terms of the policies show that the Hanover Policy is intended to be excess over, and negate contribution with, the Hartford Policy. Hartford provides no reason why this language should be ignored simply because the Hanover Policy is not a "true excess" policy, nor does Hartford give any reason why it is categorically impossible for a primary policy's "other insurance" clause to render an insurer, like Hanover, excess over another primary policy with an "other insurance" excess clause when that is what the terms dictate. *See Farm Family*, 579 N.Y.S.2d 207.[7]

Hartford's reliance on *Endurance American Specialty Ins. Co. v. Century Surety Co.*, 46 F. Supp. 3d 398 (S.D.N.Y. 2014), does not change this outcome. While the court in *Endurance* determined that the defendant's policy was, like the plaintiff's, primary with an excess clause rather than "true excess," and therefore the two excess clauses canceled each other out and ratable contribution applied, the policies in that case purported to be excess *to each other* such that giving effect to both would have resulted in the conundrum of depriving the insured of coverage altogether. *Id.* at 430. In *Endurance*, the plaintiff's excess clause expressly stated that it would be excess over "any other primary insurance" to which the insured had been "added as an additional insured by attachment of an endorsement." *Id.* That is precisely what occurred in that case, where

---

[7] This is not to say that whether a policy is "true excess" never matters. For instance, this case may be different if Hanover were purporting to be excess over a "true excess" policy, rather than a primary policy with an excess/pro rata "other insurance" clause like Hartford's. *See, e.g., Bovis*, 855 N.Y.S.2d at 466 ("in the context of automobile insurance, an umbrella policy is held to be excess to a primary policy covering the driver or lessee when operating a vehicle not owned by the insured, even if the primary policy states that its coverage for nonowned vehicles is excess").

the insured was attached by endorsement to the defendant's primary policy as an additional insured. *Id.* This made the plaintiff's policy excess to the defendant's policy. Concurrently, the defendant's policy stated that it would be "excess over any other insurance whether the other insurance is stated to be primary pro rata, contributory, excess, contingent, umbrella, or on any other basis" and does not contemplate contribution with other excess insurers. *Id.* at 405-06. This would place the defendant excess to the plaintiff. As the court in *Endurance* recognized, giving full effect to both policies would deprive the insured of any coverage, a result that New York law does not allow. *Id.* at 431. Therefore, application of the ratable contribution rule in that case was appropriate.

Here, as discussed above, no such exigency exists. Hartford's policy, unlike the plaintiff's policy in *Endurance*, does *not* claim to be excess to Defendant's. By contrast, Hanover's "other insurance" provision clearly intends to be excess over Hartford's. The paradox that the court in *Endurance* recognized would arise if both excess clauses were given effect is thus not present here. Both policies can be applied without depriving Massivemedia of coverage, regardless of whether the policies are characterized as "true excess" or not.

## CONCLUSION

The plain terms of the policies compel the Court to grant Hanover's motion to dismiss. Hartford's motion for summary judgment is accordingly denied. The Clerk of Court is respectfully requested to close the motions pending at ECF Nos. 11, 19, and 20.

SO ORDERED.

Dated:   August 11, 2015
        New York, New York

_____
Ronnie Abrams
United States District Judge